188 P.3d 799

Mervyn RAPOZO, Plaintiff–Appellee,

v.

**BETTER HEARING OF HAWAII, LLC, Defendant–Appellant.**

No. 27602.

Intermediate Court of Appeals of Hawai'i.

June 26, 2008.

Michele–Lynn E. Luke (Richards & Luke), Honolulu, on the briefs, for Defendant–Appellant.

Joe P. Moss, on the briefs, for Plaintiff–Appellee.

RECKTENWALD, C.J., WATANABE and LEONARD, JJ.

Opinion of the Court by LEONARD, J.

Defendant–Appellant Better Hearing of Hawai'i, LLC (**Better Hearing**), appeals from the Judgment of the District Court of the Fifth Circuit (**District Court**), in favor of Plaintiff–Appellee Mervyn Rapozo (**Rapozo**) and against Better Hearing, entered on November 11, 2005.[1]

In February of 2004, Rapozo purchased hearing aids from Better Hearing which he alleged did not work properly. Approximately seven months after they were purchased, Rapozo attempted to return the hearing aids, requesting a full refund. Better Hearing refused to refund the purchase price.

On July 13, 2005, Rapozo filed a Complaint alleging that: (1) the hearing aids came with a one-year guarantee; (2) Rapozo returned the hearing aids for repair at least five times within the one-year period; (3) the hearing aids were out of service for over thirty days; (4) Better Hearing failed to comply with Hawaii Revised Statutes (**HRS**) § 481K–3 (Supp.2007)[2] when it failed to accept the return of the hearing aids and make a refund; and (5) therefore, pursuant to HRS § 481K–5 (Supp.2007), Rapozo was entitled to recover twice the amount of his pecuniary loss, costs, disbursements, and reasonable attorney's fees. After a one-day bench trial, judgment was entered in favor of Rapozo and against Better Hearing in the amount of $8,610.66, together with costs and reasonable attorney's fees. On appeal, Better Hearing contends, on several grounds, that Rapozo was not entitled to a refund under Hawai'i's Assistive Technology Warranty Act, HRS Chapter 481K (Supp.2007). For the reasons set forth below, we agree.

## I. BACKGROUND

On February 10, 2004, Rapozo purchased two Starkey Arista digital hearing aids from Better Hearing at its store located in Lihue, Kauai. The purchase price for the hearing aids was $4,990 plus a $208 tax. Rapozo's medical insurance provider paid $1,044, Rapozo paid $100 by check, and he financed the balance of the purchase price, $4,054, through a third-party creditor. Better Hearing took ear molds of Rapozo's ears and sent them to the manufacturer, Starkey Labs, in Anaheim, California, to make the hearing aids.

When Rapozo began to use his hearing aids, he visited Better Hearing about four or five times for adjustments, which he testified that he understood, prior to making the purchase, would be necessary to try to optimize the function of the hearing aids. He said that he continued to have problems hearing what he wanted to hear, up close or at a distance, and approximately three months after he began using the hearing aids, he started hearing clicking noises. At that point, Better Hearing sent the hearing aids back to Starkey Labs for repair. Repair invoices dated May 20, 2004, showed that the microphones and receivers in both hearing aids were replaced free of charge, which Rapozo acknowledged. Rapozo also acknowledged that he had no reason to believe that the repairs were not done during May 2004, as reflected on the invoice. Better Hearing's President, Gary Woodard, testified that it took about a week and a half to get the hearing aids back from the manufacturer.

In late May of 2004, when Rapozo picked up the hearing aids after they were repaired, Rapozo and the technician did an initial adjustment. Rapozo did not return thereafter for any further adjustments or request any further repair.

In June of 2004, Rapozo's wife sent a letter to Better Hearing, complaining that Rapozo was not using his hearing aids and inquiring if they could be returned. In closing, she wrote, "I appreciate all that you have been doing, and it would have been marvelous that the unit work cause he needs it, but in the tight crunch of financing, paying four thousand dollars and having it sit on the shelf, just does not cut it for me." Following the

---

1. The Honorable Trudy K. Senda presided.

2. The current text of HRS Chapter 481K has remained unchanged since Rapozo brought the underlying lawsuit.

letter, Rapozo neither returned for any further adjustments nor requested any further repair.

Rapozo testified that, after he attended his class reunion—where he couldn't hear the people at his table, but he could hear sounds away from his table—he took the hearing aids back to Better Hearing and asked for a refund. The hearing aids were returned in September or October of 2004. Thereafter, in December of 2004, a Better Hearing employee returned the hearing aids to Rapozo at Rapozo's home. Rapozo also received a letter from the Better Hearing technician that explained: "I am sending your aids back to you, as you have paid for them.... They are yours to keep. I have made a few adjustments to them in hopes that they may work for you. If you feel that you would like to continue to try, I will be more than happy to continue as well, if not then they are yours to do what you want with."

At trial, Better Hearing introduced into evidence documents providing for various warranties and services applicable to Rapozo's hearing aids. First, Better Hearing provided a thirty-day total-satisfaction-money-back guarantee. Within the first thirty-day period, whether the custom-fitted hearing aids worked or not, Better Hearing would provide the customer a full refund with no questions asked. Starkey Labs, the manufacturer, provided a "Standard One Year Warranty" which included free of charge: replacement due to loss of hearing aid one time per side for one year, replacement due to damage of hearing aid one time per side for one year, unlimited repairs, and unlimited remaking of hearing aids due to fitting problems. Better Hearing provided a Life Time Customer Service Guarantee, which provided free of charge: all office visits, hearing tests, cleaning and adjustment of hearing aids, all programming of digital hearing aids, and all repairs that can be done in the office only.

Rapozo testified that he did not remember seeing Better Hearing's documents. Rapozo also testified that he did not remember receiving any documents concerning the pur-

chase of his hearing aids during his initial visit, despite having introduced into evidence a copy of a Starkey Labs Warranty Card. The Warranty Card showed Rapozo's name, the make and model of the hearing aids, serial numbers, Better Hearing's contact information, and an expiration date of February 18, 2005.[3] The back of the warranty card stated in full:

### HEARING INSTRUMENT WARRANTY

THIS CERTIFIES THAT THE HEARING INSTRUMENT(S) IDENTIFIED ON THIS CARD BY MODEL AND SERIAL NUMBER WILL BE REPAIRED OR REPLACED AT THE DISCRETION OF THE MANUFACTURER OR REPAIR SERVICE SHOWN ON THE REVERSE SIDE WITHOUT CHARGE IF FAILURE OCCURS WITHIN THE WARRANTY PERIOD.

FURTHER MODIFICATIONS MAY BE MADE BY THE MANUFACTURER OR REPAIR SERVICE AT NO CHARGE TO MEET CHANGING HEARING REQUIREMENTS DURING THIS PERIOD.

FOR SERVICING AND BATTERY NEEDS, CONTACT THE OFFICE SHOWN ON THE REVERSE SIDE OF THIS CARD. THEY CAN ALSO PROVIDE INFORMATION ABOUT EXTENDED WARRANTIES AND PREVENTATIVE MAINTENANCE PROGRAMS.

At the September 22, 2005 trial, Rapozo and Woodard testified and each submitted four exhibits, including the purchase agreement, warranty card, a document described as Starkey Labs' Standard One Year Warranty, the above-referenced correspondence and invoices, and a statement from Rapozo's creditor. At the conclusion of the trial, the District Court took the matter under advisement and ordered the parties to submit written closing statements and/or memoranda.

---

**3.** Although Rapozo purchased the hearing aids on February 10, 2004, Woodard testified that it took about a week to get the hearing aids back from Starkey Labs after the initial fitting and purchase.

On November 3, 2005, the District Court filed its Findings of Fact, Conclusions of Law, Decision, and Order and awarded Rapozo the principal amount of $8,610.66,[4] together with reasonable attorney's fees and costs. On November 15, 2005, Better Hearing filed a Notice of Appeal. On November 17, 2005, the District Court entered a Judgment pursuant to its Findings of Fact, Conclusions of Law, Decision and Order. On November 25, 2005, Better Hearing filed an Amended Notice of Appeal which included an appeal of the Judgment entered on November 17, 2005.

## II. POINTS OF ERROR

On appeal, Better Hearing raises the following points of error:

(1) The District Court erred, in Findings of Fact (**FOFs**) 38, 40, 41, and 42, in implicitly finding and concluding that Rapozo's hearing aids were "repaired" on more than one occasion.

(2) The District Court erred, in FOFs 15 and 40, in finding that, after repairs were completed by the manufacturer (which consisted of complete replacement of microphones and receivers in each unit), Rapozo continued to experience clicking sounds in his hearing aids.

(3) The District Court erred, in FOFs 33 and 34, in concluding that the warranties provided by Better Hearing and the manufacturer, Starkey Labs, failed to comply with the provisions of HRS § 481K–2(a) and (b).

(4) The District Court erred, in FOF 41, in finding and concluding that Rapozo's hearing aids were not fit for their intended purpose and therefore had a "nonconformity" within the meaning of HRS § 481K–1.

(5) The District Court erred, in Conclusion of Law (**COL**) 4, in concluding that Rapozo was entitled to a full refund of the cost of his hearing aids, pursuant to HRS § 481K–3(a)(1)(A).

(6) The District Court erred, in COLs 5 and 6, in awarding damages to Rapozo, including double recovery together with attorney's fees and costs, pursuant to HRS § 481K–5(c).

## III. STANDARDS OF REVIEW

▮ This court reviews the District Court's FOFs under the clearly erroneous standard. *Ueoka v. Szymanski*, 107 Hawai'i 386, 393, 114 P.3d 892, 899 (2005).

An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed. An FOF is also clearly erroneous when the record lacks substantial evidence to support the finding. We have defined substantial evidence as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

*Bhakta v. County of Maui*, 109 Hawai'i 198, 208, 124 P.3d 943, 953 (2005) (citations omitted; brackets omitted).

▮ We review the District Court's COLs de novo under the right/wrong standard. *Id.*

▮ Mixed questions of fact and law are reviewed under the clearly erroneous standard because, in such instances, the District Court's conclusions are dependent upon the particular facts and circumstances of this case. *Kaho'ohanohano v. Dep't of Human Services*, 117 Hawai'i 262, 281, 178 P.3d 538, 557 (2008).

▮ The interpretation of a statute is a question of law which this court reviews de novo. *Id.*

## IV. DISCUSSION

The Assistive Technology Warranty Act, which is set forth in HRS Chapter 481K, governs all sales, leases, and deliveries of assistive devices in Hawai'i[5] and applies in

---

4. The District Court states that this amount is equal to 2 × $4,305.33. The record is silent as to the basis for the $4,305.33 figure. However, neither party has appealed the calculation of the amount of damages.

5. Hawai'i is one of approximately two dozen states that have enacted assistive technology statutes that include warranties for hearing aids. A number of other states have statutes that cover wheelchairs or scooters, but not hearing aids.

this case because the hearing aids are "assistive devices." *See* HRS § 481K–1 (Supp. 2007).[6] HRS § 481K–2(a)(Supp.2007) requires *the manufacturer*[7] of an assistive device to provide a written warranty that, at a minimum, warrants that the assistive device is "fit for the ordinary purposes for which the device is used, and undertakes to pay the full cost of both parts and labor necessary to repair any nonconformity." HRS § 481K–2(b) mandates that the duration of the warranty shall be at least one year and that the expiration of the warranty is extended by various events identified in the statute. If the manufacturer fails to give a written warranty, it is nevertheless deemed to provide the statutorily mandated warranty as a matter of law. HRS § 481K–2(d).

A purchaser of hearing aids can seek a replacement or a refund from the manufacturer when the manufacturer or its agent fails to correct a nonconformity:

> If the manufacturer or its agents fail to correct a *nonconformity* as required by a warranty after a *reasonable opportunity to repair*, the manufacturer shall accept return of the assistive device from the consumer and refund the full purchase price or replace the assistive device....

There are very few court cases discussing these statutes, which vary significantly from state to state. Neither the parties nor this court identified any cases that would aid in reviewing the case at bar.

6. HRS § 481K–1 provides, in part:

"Assistive device" means any device, including a demonstrator, that a consumer purchases or accepts transfer of in this State which is used to assist a person with a disability (as defined in 42 U.S.C. §§ 12101 et seq.) in connection with a major life activity including but not limited to mobility, vision, hearing, speech, communication, maneuvering, and manipulation of a person's environment. Assistive devices include but are not limited to manual wheelchairs, motorized wheelchairs, motorized scooters, and other [aids] that enhance the mobility of an individual; hearing [aids], telephone communication devices for the deaf, assistive listening devices, and other [aids] that enhance an individual's ability to hear; voice synthesized computer modules, optical scanners, talking software, braille printers, and other devices that enhance a sight impaired individual's ability to communicate; and any other device that enables a person with a disability

HRS § 481K–3(a) (Supp.2007) (emphasis added).

HRS § 481K–3(b)(3) also provides:

> It shall be presumed that a manufacturer has had a "reasonable opportunity to repair" if the manufacturer or its agents fails [sic] to repair the same nonconformity with two attempts, or the assistive device is out of service, including by reason of attempts to repair one or more nonconformities, for a cumulative total of more than thirty business days after the consumer has returned it for repair.

The Assistive Technology Warranty Act defines a nonconformity as:

> a defect, malfunction, or condition that fails to conform to any warranty applicable to an assistive device, but does not include a defect, malfunction, or condition that results from accident, abuse, neglect, modification, or alteration of the assistive device by persons other than the manufacturer, its agent, distributor, or authorized assistive device dealer, or assistive device lessor.

HRS § 481K–1.

A. *The Allegedly Erroneous FOFs*

(1) Better Hearing argues that the District Court erred when it implicitly found

to communicate, see, hear, speak, manipulate the person's environment, move, or maneuver.

7. In FOF 31, the District Court found:

Starkey Labs is a manufacturer under the meaning of HRS Section 481K–1. [Better Hearing] is an agent of Starkey Labs and, therefore, is also considered a "manufacturer" within the meaning of HRS Section 481K–1.

Better Hearing does not identify this FOF as a point of error and, therefore, we do not address the issue of whether Better Hearing was properly found to be a manufacturer for the purposes of establishing the duties and/or liability of a manufacturer under HRS Chapter 481K. *See* Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4). We note, however, that HRS § 481K–1 states that manufacturer means (emphasis added):

[A] person who manufactures or assembles assistive devices and agents of that person, including an importer, a distributor, a factory branch, distributor branch, and a warrantor of the manufacturer's assistive device, *but does not include an assistive device dealer*.

HRS § 481K–1 defines an assistive device dealer as "a person who is in the business of selling new assistive devices."

that Rapozo's hearing aids were "repaired" on more than one occasion. Better Hearing maintains that the only nonconformity in the hearing aids—the clicking sounds—was presented for repair on only one occasion, on or about May 20, 2004. Rapozo disagrees and argues that "it does not matter how many times Better Hearing repaired the hearing aids" because the applicable sections of the statute, HRS § 481K–3(a) and (b)(3), are implicated when a manufacturer or its agents has a "reasonable opportunity to repair" a nonconformity. Rapozo claims that he gave Better Hearing "ample opportunities" to repair the hearing aids by returning them four or five times, and Better Hearing "chose to make 'adjustments' which did not cure the same problems."

As noted above, HRS § 481K–3(b)(3) provides:

> It shall be presumed that a manufacturer has had a "reasonable opportunity to repair" if the manufacturer or its agents fails to repair the same nonconformity with two attempts, or the assistive device is out of service, including by reason of attempts to repair one or more nonconformities, for a cumulative total of more than thirty business days after the consumer has returned it for repair.

Although the statute does not state that the failure to repair after "two attempts" or "over thirty *business days* out of service" are the exclusive means for establishing that a manufacturer had a reasonable opportunity to repair, no alternative theory or evidence was offered in this case.

We also must consider the meaning of "repair" within HRS § 481K–3 to determine whether the time and effort Better Hearing expended in adjusting Rapozo's hearing aids constituted a "reasonable opportunity to repair" a nonconformity.

The assurance that HRS § 481K–2 provides to consumers is that, under Hawai'i law, the manufacturer of their assistive devices must warrant that their device is fit for the ordinary purposes for which the device is used, and if the device is defective, malfunctions, or is not fit for its ordinary purposes, then the manufacturer must "repair" it to correct the nonconformity.

The "clicking sounds" experienced by Rapozo clearly constituted a nonconformity, within the meaning of the statute, and there is no dispute that the service provided in May of 2004 to address the clicking sounds was a repair.[8] In order to determine whether Better Hearing otherwise had a reasonable opportunity to repair the hearing aids, we must consider whether the "adjustments" that preceded the May 2004 repair also constituted repairs. Better Hearing argues that adjustments are not repairs because they are "anticipated and necessary for *any* hearing aid." On the record of this case, we agree.

Rapozo conceded during trial that he understood, before he purchased the hearing aids, that they would require a series of adjustments in order to reach their optimal performance. Woodard's unchallenged and uncontroverted testimony explained that the "ordinary purpose" of a hearing aid is to amplify sound for the user by working with the user's existing hearing ability through a series of adjustments. In other words, an adjustment is not a repair because the purpose of an adjustment is not to fix a defect or other nonconformity, but rather to make a properly working device perform at its best for the user's needs. Rapozo testified that the hearing aids did not work when he wore them at his class reunion because he could hear sounds from afar, but could not hear the people sitting at his table. Better Hearing counter-argues that Rapozo's experience at his reunion proved the opposite, that the hearing aids were working, but required further adjustments.

---

8. At trial, Woodard testified that "it just doesn't happen" for the microphones and the receivers to go bad on both hearing aids unless they are damaged by some event like jumping in a pool or shower with the hearing aids on. The statutory definition of nonconformity specifically excludes a defect, malfunction, or condition that results from accident, abuse, or neglect by the consum-er. *See* HRS § 481K–1. However, under the Starkey Labs Standard Warranty, Rapozo would have been entitled to a full repair or replacement even if he had damaged the hearing aids, and Better Hearing does not appeal the District Court's finding that the May 20, 2004 repair was performed to remedy a nonconformity.

On the record in this case, we are left with a definite and firm conviction that the District Court erred in finding that the adjustments to Rapozo's hearing aids constituted repairs in the context of HRS §§ 481K–3(a), 481K–3(b)(3), and 481K–1.

Rapozo argues that under Better Hearing's interpretation of the Assistive Technology Warranty Act, a hearing aid manufacturer could subvert the purpose of the Act simply by mischaracterizing repair attempts as "adjustments." While we agree that there could be circumstances involving repeated, unsuccessful attempts to "adjust" a hearing aid in which it could be found that the manufacturer had been given a "reasonable opportunity to repair" within the meaning of HRS § 481K–3(a), Rapozo failed to establish such circumstances here. For example, there is no evidence that Rapozo, during the course of the four or five initial adjustments, provided Better Hearing with written notice that the hearing aids were nonconforming because he could not hear properly with them and that they needed repairs beyond the adjustments to address the problems that he was experiencing. *See* HRS § 481K–2(f). Moreover, after the hearing aids were repaired by Starkey Labs to resolve the "clicking" sound issue, Rapozo participated in an initial in-store adjustment of the refurbished aids, but did not return for further adjustments after wearing the aids in public. Indeed, it is undisputed that, when Rapozo returned the hearing aids to Better Hearing in September or October of 2004, he was not making them available for repair and did not provide notice of or otherwise identify a nonconformity to be repaired, he simply wanted to return the devices and obtain a refund.[9] Therefore, the District Court clearly erred when it found and concluded that Rapozo's hearing aids were repaired, or presented for repair, on more than one occasion.

(2) Better Hearing contends that the District Court erred in finding that, after the May 2004 repair, Rapozo continued to experience clicking sounds in his hearing aids. We have carefully reviewed Rapozo's testimony, the letters from Rapozo's wife and Better Hearing, and the entire record of the trial below. There is no evidence whatsoever to support this finding. Rapozo testified that he returned the hearing aids specifically because of the difficulties he experienced at his class reunion. The District Court clearly erred in finding that there were continued clicking sounds.

(3) Better Hearing argues that the District Court erred in FOFs 33 and 34, when it determined that the warranties provided by Better Hearing and the manufacturer, Starkey Labs, failed to comply with HRS § 481K–2(a) and (b). FOF 33 merely states that the statute requires that the warranty duration be not less than one year and tolls and extends the period under specified conditions. Although this may be better stated as a conclusion of law, it is not incorrect.

FOF 34 finds that the warranty documentation provided by Better Hearing to Rapozo did not comply with the requirements set forth in HRS § 481K–2(a) and (b), but does not state which statutory requirements are unsatisfied. As both the Starkey Labs Warranty Card and the document describing the Starkey Labs Standard One Year Warranty, which included Better Hearing's thirty-day total-satisfaction guarantee and Life Time Customer Service Guarantee, were received into evidence without objection, we assume that these documents constituted the written warranty reviewed by the District Court. Neither document stated that "the manufacturer warrants that the assistive device is fit for the ordinary purposes for which the device is used," or words to that effect, as is required by HRS § 481K–2(a). Accordingly, FOF 34 is not clearly erroneous.

We note that, although the written warranty was not in compliance with the statute, Better Hearing was deemed to have given the warranty as a matter of law. HRS § 481K–2(d).

---

9.  HRS § 481K–2(f) provides (emphasis added):
    A consumer shall make an assistive device available for repair *by presenting it* to the manufacturer, its agent, representative, authorized assistive device dealer, or authorized assistive device lessor prior to the expiration of the warranty period *and providing* the manufacturer, its agent, representative, authorized assistive device dealer, or authorized assistive device lessor written *notice of the nonconformity.*

(4) Better Hearing argues that the District Court erred in finding and concluding that, based on Rapozo's testimony, the hearing aids were not fit for their ordinary purpose and therefore had a nonconformity under HRS § 481K–1. As concluded above, the need for adjustment, without more, is not a nonconformity in a hearing aid. The undisputed testimony was that the ordinary purpose of a hearing aid is to provide amplification, but unfortunately, these assistive devices do not provide a perfect replacement for the fully functioning human ear. There is no suggestion in the record that Rapozo was misinformed as to the functionality of the devices or the necessity that he would have to work with Better Hearing's technician to optimize the usefulness of the hearing aids. There is no evidence, including in Rapozo's testimony, that the hearing aids were defective, malfunctioning, or were unfit for their ordinary purpose after the May 2004 repair. Rather, it appears that Rapozo was not willing to work on further adjustments to the hearing aids.

### B. *The Allegedly Wrong COLs*

In light of our rulings on the above-referenced findings of fact, we conclude that the District Court erred, as a matter of law, in concluding that Rapozo was entitled to a full refund of the cost of his hearing aids, a double recovery of his alleged pecuniary losses, attorney's fees and costs.

■ Rapozo argues, additionally and alternatively, that Better Hearing was liable for damages under HRS § 481K–5(c) for failing to inform him of his warranty rights under the statute and failing to provide the proper written warranty. HRS § 481K–5(c) provides:

> In addition to pursuing other remedies, a consumer may bring an action to recover damages caused by a violation of this chapter. The court shall award a consumer who prevails in the action twice the amount of any pecuniary loss, together with costs, disbursements, and reasonable attorney fees, and any equitable relief that the court may determine is appropriate. A failure by a manufacturer to provide the warranty required by section 481K–2 ...

shall constitute prima facie evidence of an unfair or deceptive act or practice under chapter 480. Any action brought under this chapter by a consumer must be initiated within one year following the expiration of the warranty period.

Notwithstanding Better Hearing's failure to provide Rapozo with the required written warranty of fitness for ordinary purposes under HRS § 481K–2(a), Rapozo did not establish that he suffered any "damages caused by [that] violation." HRS § 481K–5(c). Indeed, while the written warranty was inadequate, Better Hearing provided the services and repairs that were required by the statutory warranty. Thus, the violation did not support the District Court's award of damages in this case. In addition, although HRS § 481K–5(c) provides that "a failure by a manufacturer to provide the warranty required by section 481K–2 ... shall constitute prima facie evidence of an unfair or deceptive act of practice under chapter 480," the District Court did not award Rapozo damages under HRS Chapter 480 and Rapozo did not cross-appeal from the District Court's judgment.

## V. *CONCLUSION*

For these reasons, we reverse the November 11, 2005 Judgment of the District Court.

