204 P.3d 476

Mervyn RAPOZO, Petitioner/Plaintiff–
Appellee

v.

BETTER HEARING OF HAWAII, LLC,
Respondent/Defendant–Appellant.

No. 27602.

Supreme Court of Hawai'i.

March 19, 2009.

Joe P. Moss, for petitioner/plaintiff-appellee, on the request.

Michele–Lynn E. Luke (Kessner Umebayashi Bain & Matsunaga), Honolulu, for respondent/defendant-appellant on the objections.

MOON, C.J., NAKAYAMA, ACOBA, DUFFY, JJ., and Circuit Judge CHANG, Assigned Due to Vacancy.

Opinion of the Court by ACOBA, J.

On January 22, 2009, Petitioner/Plaintiff–Appellee Mervyn Rapozo (Petitioner) filed a request for $308.77 in costs and $8,658.00 in attorneys' fees for a total of $8,964.77,[1] from Respondent/Defendant–Appellant Better Hearing of Hawai'i, LLC (Respondent), stemming from *Rapozo v. Better Hearing of Hawaii, LLC*, 119 Hawai'i 483, 199 P.3d 72 (2008), *as amended on recon. by* No. 27602, 120 Hawai'i 237, 203 P.3d 657, 2009 WL 84695 (Haw. Jan.14, 2009) [hereinafter *Rapozo II* ], *aff'g in part and rev'g in part, Rapozo v. Better Hearing of Hawaii, LLC*, 118 Hawai'i 285, 188 P.3d 799 (App.2008) [hereinafter *Rapozo I* ]. For the reasons discussed herein, Petitioner's request for costs is granted in part and denied in part, and Petitioner's request for attorney's fees is granted.

I.

On July 13, 2005, Petitioner filed suit against Respondent in the district court of the fifth circuit (the court). *See Rapozo II*, 119 Hawai'i at 487, 199 P.3d at 76. Petitioner alleged that Respondent violated Hawai'i

---

**1.** Petitioner appears to have erred in adding his requested costs and fees. Based on Petitioner's own cost and fee tables, the total amount requested is $8,966.77.

Revised Statutes (HRS) § 481K–3 (Supp. 2007) of the Assistive Technology Warranty Act (the Act) insofar as Respondent failed to correct a "nonconformity"[2] in hearing aids it sold to Petitioner, and failed to accept Petitioner's return of the hearing aids and provide Petitioner with a refund. *See id.* The court found that Respondent violated HRS chapter 481K and awarded Petitioner "twice the amount of any pecuniary loss, together with costs, disbursements and reasonable attorneys fees, pursuant to HRS [§ ]481K–5(c)."

Respondent appealed to the Intermediate Court of Appeals (the ICA), which reversed the court. *Rapozo I*, 118 Hawai'i at 293, 188 P.3d at 807. The ICA held that the court erred in finding that the hearing aids sold by Respondent contained a "nonconformity," *i.e.*, a defect, and in finding that Respondent violated HRS § 481K–3 by failing to repair the hearing aids within two opportunities or refund its purchase price to Petitioner. *Id.* at 292–93, 188 P.3d at 806–07; *see also* HRS § 481K–3(a) (requiring sellers of assistive devices to provide a replacement or a refund when a device contains a "nonconformity" that has not been corrected within two attempts).

Petitioner applied for certiorari in this court on September 8, 2008 (Application). Upon granting Petitioner's Application, this court reversed the ICA, ruling that the court did not err in finding that the hearing aids sold by Respondent contained a "nonconformity" and in finding that Respondent failed to correct that "nonconformity." *See Rapozo II*, 119 Hawai'i at 485, 199 P.3d at 74. The ICA was affirmed, however, in its denial of Petitioner's request to remand the case for a determination of damages under HRS chapter 480. *Id.* at 489, 199 P.3d at 78 ("Petitioner failed to cross-appeal from the court's judgment, which had not awarded damages under HRS chapter 480.").

The costs and fees requested by Petitioner in the instant matter are those that have been allegedly incurred on appeal. Respondent objects to Petitioner's requests as detailed below.

## II.

Petitioner argues that the "fees and costs for post trial appellate representation should be awarded" pursuant to HRS § 481K–5(c) (Supp.2007).[3] Respondent, citing no authority, counters with the claim that the plain language of HRS § 481K–5 "does not contain any authority for the recovery of costs on appeal." In similar fashion, Respondent objects to the award of attorneys' fees on the basis that HRS § 481K–5 "does not provide any authority for the recovery of attorneys' fees on appeal."

HRS § 481K–5(c) provides that "[t]he court shall award a consumer who prevails in [an] *action* [under the Act,] twice the amount of any pecuniary loss, together *with costs*, disbursements, *and reasonable attorney fees*, and any equitable relief that the court may determine is appropriate." (Emphases added.) The term "action" is typically understood as a "proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." *Leslie v. Estate of Tavares*, 93 Hawai'i 1, 4, 994 P.2d 1047, 1050 (2000) (citing *Black's Law Dictionary* 28 (6th ed.1990)). An appeal is generally considered to be "a continuation of an original proceeding and not a new action." *Id.* Therefore, the term "action," as used in HRS § 481K–5, is properly construed as encompassing appellate proceedings that are a continuation of the original proceedings at the trial level. *See id.* As the ICA and supreme court proceedings at issue here are continuations of an original HRS § 481K–5 court "action," the award of costs and attorney fees incurred in those appellate proceedings are authorized by the language of HRS § 481K–5.

---

**2.** HRS § 481K–1 (Supp.2007) defines "nonconformity" as "a defect, malfunction, or condition that fails to conform to any warranty applicable to an assistive device...."

**3.** Petitioner also cites to Hawai'i Rules of Appellate Procedure (HRAP) Rules 39 and 53(b). HRAP Rule 39 is addressed in later sections. HRAP Rule 53, as Respondent points out, is inoperative and reserved for future use.

## III.

Petitioner claims that he is the prevailing party on appeal. On the other hand, Respondent asserts that it "prevailed before the [ICA] and partially prevailed on reconsideration[ ] before the Hawaii Supreme Court." Respondent contends that because "both parties were prevailing parties, ... [Petitioner should] only be awarded allowable costs, to the extent that they were incurred after the Writ of Certiorari was granted." Similarly, Respondent also argues that fees "should be limited to some portion of fees incurred subsequent to the filing of [Petitioner's] writ of certiorari."

### A.

■ The "prevailing party" is the party that prevails on the main disputed issues of a case. *Fought & Co. v. Steel Eng'g & Erection, Inc.*, 87 Hawai'i 37, 52–53, 951 P.2d 487, 502–03 (1998). For the purposes of awarding costs and attorney fees, "[a] party need not 'sustain his entire claim' in order to be a 'prevailing party[.]' " *Id.* at 52, 951 P.2d at 502. The court must "identify the principal issues raised by the pleadings and proof in a particular case, and then determine, on balance, which party prevailed on the issues." *Id.* at 53, 951 P.2d at 503.

■ At trial, the principal issue in dispute was whether Respondent violated HRS § 481K–3 when it failed to accept the return of, and to grant a refund for, the allegedly faulty hearing aids sold to Petitioner. *See Rapozo II*, 119 Hawai'i at 487, 199 P.3d at 76 (citing *Rapozo I*, 118 Hawai'i at 287, 188 P.3d at 801). On appeal to the ICA, the principal issues concerned the interpretation of "nonconformity" under HRS § 481K–1 and whether Respondent had "repaired" Petitioner's hearing aids more than once. *Rapozo I*, 118 Hawai'i at 289, 188 P.3d at 803 (listing the findings and conclusions challenged by Respondent).[4] The ICA held that the court erred in finding (1) that the problems associated with the hearing aids amounted to a "nonconformity" under HRS § 481K–1, and (2) that Respondent failed to repair that "nonconformity" in accordance with HRS § 481K–3. *See id.* at 292, 188 P.3d at 806; *Rapozo II*, 119 Hawai'i at 488, 199 P.3d at 77. Thus, the ICA reversed the court and held that because Respondent did not violate HRS § 481K–3, it was not liable under HRS § 481K–5. *Rapozo I*, 118 Hawai'i at 292–93, 188 P.3d at 806–07. In addition, the ICA determined that Petitioner was not entitled to damages under HRS chapter 480 for Respondent's failure to provide a warranty as required by HRS § 481K–2. *Id.* at 293, 188 P.3d at 807.

On application to this court, the principal issues were (1) whether Petitioner's hearing aids were "fit for their ordinary purpose" under HRS § 481K–1, and (2) whether Petitioner had provided Respondent with a "reasonable opportunity to repair" the devices. *Rapozo II*, 119 Hawai'i at 488–89, 199 P.3d at 77–78.[5] This court held that the court did

4. The points of error considered by the ICA were that the court erred (1) "in implicitly finding and concluding that [Petitioner's] hearing aids were 'repaired' on more than one occasion"; (2) "in finding that, after repairs were completed, [Petitioner] continued to experience clicking sounds in his hearing aids"; (3) "in concluding that the warranties provided by [Respondent] and the manufacturer, Starkey Labs, failed to comply with the provisions of HRS § 481K–2(a) and (b)"; (4) "in finding and concluding that [Petitioner's] hearing aids were not fit for their intended purpose and therefore had a 'nonconformity' within the meaning of HRS § 481K–1"; (5) "in concluding that [Petitioner] was entitled to a full refund of the cost of his hearing aids, pursuant to HRS § 481K–3(a)(1)(A)"; (6) "in awarding damages to [Petitioner], including double recovery together with attorney's fees and costs, pursuant to HRS § 481K–5(c)." *Rapozo I*, 118 Hawai'i at 289, 188 P.3d at 803.

5. On application to this court, the issues under review were "[w]hether the ICA gravely erred in reversing [the court's] judgment of November 17, 2005[,]" and in deciding (1) "that the court was clearly erroneous in holding that the hearing aids were not fit for their ordinary purpose under HRS chapter 481K"; (2) "that the court was clearly erroneous in holding that [Petitioner] had given [Respondent] a reasonable opportunity to repair the hearing aids"; (3) "that the court was clearly erroneous in holding that the adjustments to [Petitioner's] hearing aids constituted repairs in the context of HRS §§ 481K–1, 481K–3(a) and 481K–3(b)(3)"; (4) "that the case [should not be remanded] to the court for an award of damages under HRS chapter 480." *Rapozo II*, 119 Hawai'i at 488–89, 199 P.3d at 77–78.

not err in finding (1) that "Petitioner purchased hearing aids that were 'nonconforming'" under HRS § 481K–1 and (2) "that Respondent had a 'reasonable opportunity to repair' the devices under the Act." *See id.* at 499, 199 P.3d at 88. The ICA was therefore reversed as to these matters. *See id.* The ICA was affirmed, however, in its denial of Petitioner's request to remand the case for a determination of damages under HRS chapter 480. *See id.*

Respondent is correct that it prevailed on appeal in maintaining that the case should not be remanded for a determination of damages under HRS chapter 480. *See id.* Damages under HRS chapter 480 were authorized under HRS § 481K–5, which provides, "A failure by a manufacturer to provide the warranty required by section 481K–2 ... shall constitute prima facie evidence of an unfair or deceptive act or practice under chapter 480." *See Rapozo I,* 118 Hawai'i at 293, 188 P.3d at 807 (referring to Petitioner's HRS chapter 480 argument). However, the HRS chapter 480 claim was derivative of Respondent's alleged violation of HRS § 481K–2, and not a principal issue on appeal.

Moreover, as noted by both the ICA and this court, the court did not award any damages under HRS chapter 480 and Petitioner failed to cross-appeal that decision. *See Rapozo II,* 119 Hawai'i at 489, 199 P.3d at 78; *Rapozo I,* 118 Hawai'i at 293, 188 P.3d at 807. Respondent's success on the secondary HRS chapter 480 claim is not enough to make it a "prevailing party" on the "principal issues raised by the pleadings and proof[.]" *Fought,* 87 Hawai'i at 52–53, 951 P.2d at 502–03. The principal issues on appeal concerned the definition of "nonconformity" in HRS § 481K–1 and whether Respondent was given a reasonable opportunity to repair the nonconformity. Petitioner ultimately prevailed on the principal issues so he is the "prevailing party" for purposes of awarding appellate costs and attorney fees. *See Rapozo II,* 119 Hawai'i at 485, 499, 199 P.3d at 74, 88.

### B.

Respondent argues that because the ICA held in its favor, if appellate costs and attor-

ney fees are awarded to Petitioner, they should include only the costs and fees incurred after the Application was accepted. Respondent cites no authority to support its position.

 The determination of whether Petitioner was a "prevailing party" necessarily requires a final decision from an appellate court. While an ICA decision may, in some situations, qualify as a final appellate decision, that decision is subject to the acceptance of certiorari:

> *The timely filing of an application for a writ of certiorari stays finality of the intermediate court of appeals' judgment on appeal* unless otherwise ordered by the supreme court. If the application for a writ is dismissed or rejected, the intermediate court of appeals' judgment on appeal is effective upon entry of the order dismissing or rejecting the application for writ. *If the application for a writ is accepted, the intermediate court of appeals' judgment on appeal is stayed pending final disposition of the certiorari proceeding* in accordance with Rule 36.

HRAP Rule 41 (2008) (emphases added). The Application was accepted and a decision rendered by this court, which reversed the ICA as to the HRS chapter 481K issues and affirmed the ICA as to the HRS chapter 480 issue. Therefore, this court's decision is the final decision on appeal. *See* HRAP Rule 36(d)(2) (2008) ("If an application for a writ of certiorari is accepted and the disposition of the intermediate court of appeals is vacated or otherwise modified in whole or in part, *a new judgment* on appeal shall be entered by the supreme court and is effective upon entry." (Emphasis added.)). For purposes of awarding costs and attorney fees on appeal, the ICA decision, except for the HRS chapter 480 issue, was superseded. As a result, Respondent's claim that costs and attorney fees should be awarded pursuant to the ICA decision, without regard to the subsequent supreme court decision overruling the ICA, must fail. This is consistent with the notion that the appellate process is not a series of discrete actions, but a continuation of the

proceedings initiated before lower courts. *See Leslie*, 93 Hawai'i at 4, 994 P.2d at 1050; *see also* HRAP Rule 2.1(b) (2008) (" '[A]ppeal' includes every proceeding in the Hawai'i appellate courts other than an original action[.]'").

## IV.

Petitioner requests $308.77 in costs allocated as follows:

| | |
|---|---|
| Transcripts | $ 27.45 |
| Copies (812 at $0.15/copy) | $121.80 |
| Postage | $ 25.52 |
| Trip to Oahu for oral argument | |
| Plane fare | $130.00 |
| Bus fare | $ 4.00 |

Respondent objects to these requests on several grounds. First, Respondent argues that travel expenses are not recoverable costs because they are not recognized by HRAP Rule 39 and because Petitioner has provided no other authority showing they are otherwise recoverable. Second, Respondent claims that Petitioner "has failed to itemize allowable costs such as copying charges and postage[,]" thereby implying that those charges are not recoverable.

■ Although HRS § 481K–5(c) provides for the general recovery of costs on appeal, it does not list or identify the kinds of costs that are recoverable. Respondent concedes, however, that "[HRAP] Rule 39 allows an assessment of certain costs where the party has prevailed on appeal." HRAP Rule 39(c) (2008) [6] provides as follows:

**6.** HRAP Rule 39(c) (2008) is identical to HRAP Rule 39(c) (2005) except for the addition of item (5) dealing with travel expenses and postage.

Respondent filed its initial notice of appeal to the ICA on November 15, 2005. *Rapozo I*, 118 Hawai'i at 289, 188 P.3d at 803. On that date, HRAP Rule 39(c) (2005) was applicable, and the Rule did not list intrastate travel and postage expenses as recoverable costs. In July 2007, Rule 39(c) was amended to include intrastate travel and postage expenses. The ICA decision followed in June 2008. *See id.* Application for certiorari was filed in September 2008 and granted soon after. *See Rapozo II*, 119 Hawai'i at 485, 199 P.3d at 74. Petitioner then incurred intrastate travel expenses in November 2008 for the purpose of attending oral argument in this court. As Petitioner's travel expenses were incurred in 2008, after certiorari was accepted, the 2008 version of HRAP Rule 39(c) is applicable.

(c) *Costs Defined.* Costs in the appellate courts are defined as: (1) the cost of the original and one copy of the reporter's *transcripts* if necessary for the determination of the appeal; (2) the premiums paid for supersedeas bonds or other bonds to preserve rights pending appeal; (3) the fee for filing the appeal; (4) the cost of printing or otherwise producing necessary *copies of briefs and appendices,* provided that copying costs *shall not exceed 20¢ per page;* (5) *necessary postage,* cost of facsimiles, *intrastate travel,* long distance telephone charges; and (6) any other costs authorized by statute or rule.

(Emphases added.) A request for costs must also be accompanied by an "itemized and verified bill of fees or costs, together with a statement of authority for each category of items and, where appropriate, copies of invoices, bills, vouchers, and receipts." HRAP Rule 39(d)(1) (2008).[7]

## A.

■ The cost of the original and up to one copy of a transcript is recoverable under HRAP Rule 39(c). The $27.45 transcript cost requested by Petitioner is supported by an invoice. The cost appears to be for one copy of the transcript, which adheres to the restrictions of HRAP Rule 39(c). Respondent has not objected to this cost. Thus, the $27.45 transcript cost is allowed. *See, e.g., Blair v. Ing,* 96 Hawai'i 327, 335, 31 P.3d 184, 192 (2001) ("In the absence of opposition, we presume that the remaining costs were reasonable.)" (discussing costs under HRS

*See also Hawai'i Ventures, LLC v. Otaka, Inc.,* 116 Hawai'i 465–66, 173 P.3d 1122–23 (2007) (applying HRAP Rule 39(c) (effective July 1, 2007) to appellate proceedings initiated prior to July 1, 2007); *Tortorello v. Tortorello,* 113 Hawai'i 432, 442, 444, 153 P.3d 1117, 1127, 1129 (2007) (applying HRAP Rule 39(c) (2007) to postage costs that were incurred in 2005 and 2006, and a cost request that was filed in 2006). Petitioner does not identify when his postage expenses were incurred.

**7.** HRAP Rule 39(d)(1) also mandates that requests for costs and attorney fees stemming from the representation of a non-indigent client, "substantially compl[y] with Form 8...." Respondent does not contest that Petitioner's request is in "substantial compliance" with Form 8.

§ 607–9 and HRAP Rule 39(c) (2000)); *Wong v. Takeuchi,* 88 Hawai'i 46, 53, 961 P.2d 611, 618 (1998) ("Unless there is a specific objection to an expense item, the court ordinarily should approve the item." (discussing costs under HRS § 607–9)).

## B.

■ Petitioner requests $121.80 for the cost of "812 copies post judgment, which includes documents filed with the appellate courts and correspondence[,]" made at the rate of $0.15 per copy. Respondent asserts that these costs should be denied because they are not "itemized." HRAP Rule 39(d)(1) requires the itemization of costs, and where appropriate, supporting documentation. Appellate copying costs are further limited to the costs of "briefs encompassed by HRAP Rule 28 [and] the number of copies required by HRAP Appendix A." *Kamalu v. Paren,* 110 Hawai'i 269, 279, 132 P.3d 378, 388 (2006).

Petitioner has not itemized his requested copying costs. Petitioner has also failed to provide any documentation showing that those costs were actually incurred. Respondent is correct in that Petitioner did not comply with the itemization requirements of HRAP Rule 39(d)(1). As a result, Petitioner's request for $121.80 in copy costs is denied.

## C.

■ Petitioner requests $25.52 in postage costs. Respondent "objects to an award of costs on the basis that [Petitioner] has failed to itemize allowable costs such as … postage." Even assuming that the 2008 version of Rule 39 applies, which would allow Petitioner to recover "necessary postage," Respondent's objection is still meritorious. Petitioner provides no itemization of his alleged postage cost. *See* HRAP Rule 39(d)(1). Petitioner also fails to provide a receipt or other documentation showing that the claimed postage cost was validly incurred. *See id.* Moreover, Petitioner does not attempt to explain why this cost was "necessary." As a result, Petitioner's request for $25.52 in postage costs is denied. *See Tortorello,* 113 Hawai'i at 444–45, 153 P.3d at 1129–30 (denying a request for postage for lack of supporting documentation and failure to prove the request was reasonably and necessarily incurred on appeal).

## D.

■ Petitioner requests $134.00 for expenses related to his trip from Kauai to Oahu for oral argument. Respondent objects on the ground that HRAP Rule 39 does not allow for recovery of travel costs. Contrary to Respondent's objection, HRAP Rule 39(c) (2008) expressly allows recovery for "intrastate travel" expenses.

■ "Intrastate travel" includes airfare and bus expenses. *See Buscher v. Boning,* 114 Hawai'i 202, 224–25, 159 P.3d 814, 836–37 (2007) (discussing the definition of "intrastate travel" under HRS § 607–9 as including expenses for airfare and rental car). Petitioner has also itemized his intrastate travel costs into airfare and bus fare. The request for airfare is documented by a receipt showing a $130.00 charge for a coach seat. The request for bus fare is documented with what appear to be transfer tickets from a City and County of Honolulu Bus. While the bus transfer tickets do not memorialize the fare actually paid, Respondent does not challenge Petitioner's assertion that the bus fare was $4.00 for a round trip between the Honolulu International Airport and the Supreme Court building. Because Petitioner's $134.00 in intrastate travel costs is itemized and documented, and the reasonableness of that amount is not specifically challenged by Respondent, $134.00 is allowed pursuant to HRAP Rule 39(c) and HRS § 481K–5. *See Blair,* 96 Hawai'i at 335, 31 P.3d at 192 (allowing documented costs without inquiry into their reasonableness because "no opposition was received regarding the reasonableness of the costs").

## V.

Petitioner requests $8,658.00 in attorney fees, which reflects 33.3 hours of work at a rate of $250.00 per hour, along with $333.00 in general excise taxes paid at a rate of 4.0%. Respondent contests this request on the ba-

sis that "HRS § 481K–5 ... does not provide any authority for the recovery of attorneys' fees on appeal" and that Petitioner "has failed to demonstrate any [other] authority which would entitle him to such a recovery."

## A.

Generally, attorney fees can only be awarded if provided for by statute, stipulation, or agreement. *See id.* at 329, 31 P.3d at 186. However, as mentioned earlier, HRS § 481K–5(c), on its face, allows a court to award "reasonable attorney fees" stemming from proceedings at both the trial and appellate levels. Respondent's argument therefore is not persuasive.

Petitioner has provided a list of his requested fees in accordance with HRAP Rule 39(d)(1). Respondent does not challenge any item on this list or otherwise object to the reasonableness of the requested fees. Consequently, Petitioner's request for $8,658.00 in attorney fees is granted. *See id.* at 335, 31 P.3d at 192 (granting request for reasonable attorney's fees in full where no specific challenges were made).

## B.

Included within Petitioner's request for attorney fees is $333.00 in general excise taxes. Respondent does not specifically challenge this request. Therefore, in accord with prior holdings of this court, Petitioner's request for $333.00 in general excise taxes is granted. *See DFS Group L.P. v. Paiea Props.*, 110 Hawai'i 217, 223, 131 P.3d 500, 506 (2006) ("Accordingly, applying a rate of $215/hour to a sum of 105 hours, we conclude that DFS has shown that it has incurred $22,575.00 in reasonable attorneys' fees, *and $940.70 in taxes* [and w]e therefore award DFS $23,515.80 in attorneys' fees." (Emphasis added.)); *Blair*, 96 Hawai'i at 336, 31 P.3d at 193 ("Thayer is awarded $21,370.00 for attorneys' fees, *$898.82 for general excise tax*, and $740.01 for costs[.]" (Emphasis added.)).

## VI.

In light of the foregoing, Petitioner's requests for copy and postage costs in the amount of $121.80 and $25.52, respectively, are denied. Petitioner is awarded $27.45 in transcript costs, $134.00 in intrastate travel costs, $8,325.00 in attorney fees, and $333.00 in general excise taxes, for the total sum of $8,819.45, from Respondent.